Oh yay, oh yay, oh yay. The Honorable Appellant Court, 5th District, State of Illinois, is now in session. The Honorable Justice Vaughn presiding, along with Justice Welch and Justice Barberis. First case this morning is 523-0527, Peoples v. Gardner. Arguing for the appellant is Emily DiStefano. Arguing for the appealee is Adam Trejo. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is allowed to record these proceedings today. Good morning, counsel.  We have read your briefs, we're excited to hear your arguments, so we are familiar with the facts. You can jump right into argument if you're ready. Ms. DiStefano, you represent the appellant, is that correct? That's correct, Your Honor. Are you ready to proceed? Yes, I am. All right, you may do so. Thank you. Thank you. Good morning, Your Honors, and may it please the court. As I said, I'm Emily Scout DiStefano from the State Appellate Defender for Mr. Gardner. There are five issues in the briefs, and unless Your Honors would prefer otherwise, I planned to focus on the second and third issues regarding the denial of a public trial and trial counsel's failure to use available lynch evidence showing the victim's reputation for violence. Mr. Gardner was denied his right to a public trial when the judge excluded Mr. Gardner's family and all other members of the public from the courtroom during jury selection. Exclusion of the public from any stage of a criminal trial violates the defendant's right to a public trial unless four requisites are shown. One, that there is an overriding interest that is likely to be prejudiced absent the exclusion. Two, the exclusion is no broader than necessary to protect that interest. Three, the trial judge considers reasonable alternatives to the exclusion, and four, the judge makes findings adequate to support that exclusion. The trial judge must consider reasonable alternatives to the exclusion even when not offered by the parties. Here, the judge said that some of Mr. Gardner's family, as well as the decedent's family, wanted to come into the courtroom, but that it was, quote, packed with people. The judge explained further and said that, quote, he had already ordered no one is to come in other than jury veneermen until we have a jury selected. The judge took this drastic action without considering, much less satisfying, any of the constitutional requisites for closing proceedings. Crowding in the courtroom is not a sufficient reason for such a broad closure, and the judge did not express any interest needed beyond convenience in having as many veneermen in there as possible. Now, this convenience came to the court at the expense of Mr. Gardner's essential constitutional right to a public trial. The judge's blanket exclusion of any members of the public from the courtroom during jury selection requires reversal of Mr. Gardner's convictions and remand for a new trial. Did trial counsel object to that procedure? Yes, we argued that she did object, that she told the court that there was a right to remain a public trial. So they just left the doors open? Is that what they should have done? No, I think that it seemed that the judge was wanting as many veneermen in there as possible, and there was a request from Mr. Gardner's family, as well as the decedent's family, to come in, and at a minimum, that should have been allowed, as a right to a public trial is a fundamental right. Was there a place for him in there? I thought you said it was packed. That's what the judge said. Did the judge lie? No, I don't think the judge lied at all. So it was packed? Yes, but I think it was packed with veneermen. So what should he have done? Open the doors and go all the way out to the street? Is that what you're saying? No, Your Honor, I think he should have brought in less veneermen at a time, enough to select the jury and go in waves, and at a minimum, should have allowed some of Mr. Gardner's and the decedent's family in. He didn't explain why that was happening, except that it was crowded, and that's not a sufficient reason to close the courtroom. This occurred in the second round, is that correct? There were some jurors questioned ahead of time, and then for the second round, they closed the courtroom, is that correct? It's not completely clear when they closed it. The judge was speaking in past tense that he had already ordered that no one was to come in, but even if it did happen at the point that the judge put it on the record, there were still jurors to be selected. Jury selection had not finished. It was not complete. Now, turning to the third issue regarding Lynch evidence, counsel was ineffective for confessing to the state's motion barring her from introducing evidence of Jarmarko Folks' violent behavior. Mr. Gardner's entire defense rested on the belief that he was in danger, that he shot Folks because Folks, who was reaching for a loaded gun that night, was known to be violent and aggressive. Defense counsel had available to her evidence of numerous instances of Folks' propensity for violence, including times where he had spit, choked, punched, and threatened his girlfriend, and also threatened police. Now, the judge initially limited the evidence to instances Gardner experienced himself, but it was revisited at trial during Mr. Gardner's testimony after the state objected. And by the end of the discussion, counsel conceded to the state, as she believed enough reputation evidence came out without getting into, quote, more complicated territory. Although the court previously ruled that two specific instances from Mr. Folks' arrests were inadmissible, counsel still had several other instances of conduct and general reputation evidence to explore through more objective evidence. Just because that avenue was more complicated did not mean she could abandon her duty to present the relevant evidence corroborating Mr. Gardner's self-defense. Because counsel abandoned available objective evidence of Folks' violent character, the jury only heard subjective evidence of encounters between Mr. Gardner and Folks, and broad statements that people knew Folks was threatening Gardner. But the jury didn't hear about all those specific instances where Folks showed his violent nature, and this evidence bore directly on the question of whether Gardner had reason to fear for his life and to resort to self-defense. Counsel's concession prevented him from presenting a complete defense and deprived him of a fair trial, and this court should remand. And thank you. If your honors don't have any further questions, that concludes my argument. Since some evidence came out about Folks' violent encounters in the past with the defendant and his nature, how do you show prejudice then? So, your honor, we argued that because his entire case rested on the belief that he needed to defend himself, the jury only heard about the subjective instances that Mr. Gardner himself experienced. And while that was correct for the jury to hear those things, you can't help but believe that those had to be a bit biased, because they came from Mr. Gardner himself. Rather than hearing the subjective evidence that had nothing to do with Mr. Gardner, that showed Mr. Folks' violent behavior with other people, with the police, and in the community in general. So we believe that that would have led the jury to a different verdict. Thank you. Questions, Justice Welch? No questions. All right. Thank you. Thank you. Mr. Ponio will be given a chance for rebuttal in a moment. Mr. Trejo, are you ready to proceed? Yes. May it please the court, counsel, Adam Trejo, on behalf of the people of the state of Illinois. Do you believe the defendant's trial counsel's statement that he has a right to a public trial, do you believe that's the same as an objection? That is an acquiescence, and that's the interpretation from the state based on the record, because the trial court was not ambiguous when he presented the question to both the state and the defendant. According to the transcript, the trial court specifically asked the state, are you agreeable that we close the courtroom at this stage of the proceedings? And it was during a private striking conference, and the state said, yes, sir. Then the court asked defense counsel, defense counsel, question mark. And then defense counsel stated, it is my understanding there is an exception to the right to remain to a public trial. The court stated, right. All right, then. That is an acquiescence. And in further support of this interpretation, defense counsel did not file a post-trial motion challenging this issue, which supports the state's interpretation that this was an acquiescence. Defense counsel cannot make statements which come off as you're agreeing to the court's procedure after the state also further agreed to that, and then argue on appeal that this was error. This was a complete acquiescence, and review under the plain error doctrine is forfeited because this was invited error. And the state takes issue with the manner in which defendant presented the issue in its brief. And in the opening brief, defendant does not mention that they didn't object. They don't raise plain error. They go to their analysis under structural error, and they cite people v. Evans for that proposition. However, in people v. Evans, the defense counsel in that case objected at trial and filed a post-trial motion. It was preserved. When you raise it on appeal after it's preserved, you go straight to structural error. However, in the case decided by the state in its brief, when it's forfeited, you go through a plain error analysis. Furthermore, even if this court disagrees with the state's interpretation that this was an acquiescence, people v. Radford, a case from the 3rd District, in that case, the trial court ordered jury selection to close, and defendant argued second-pronged plain error because it wasn't preserved. And in that case, the appellate court stated that public trial violations, they're subject to a triviality standard. Although second-pronged plain error is not subject to a harmless error standard, it is subject to a triviality standard, and that's whether the actions of the court deprive defendant of the protections conferred by the Sixth Amendment. And in its brief, defendant doesn't mention any prejudice, any harm. The people say also we v. United States were also concerned an unpreserved argument regarding the closure during jury selection. And there, the United States Supreme Court concluded that it was a trivial closure, meaning that the trial was not conducted in a secret or remote place. The closure was limited strictly to voir dire. The courtroom remained open during the evidentiary phase of trial, which we have here. Defendant has not identified anything in the record to cause concern regarding the impartiality of the jury. Furthermore, it's the state's position that during the private striking conference, when this issue arose, 28 jurors had already been questioned. And from those 28 jurors, 12 were selected from those two panels. After the private striking conference, jury selection continued for the alternate jurors. So after the private striking conference, it strictly concerned the selection of the alternates, and they never served on the jury. The manner in which this issue arose, it's the state's interpretation that it arose after the jury was selected, prior to the closure of the courtroom. Seeing that I have five minutes and 30 seconds, I'm going to move on to the second issue. In regards to the second issue, defense counsel successfully introduced lynch evidence under the first factor. Specifically, defense counsel was able to procure six different instances in which the defendant alleged that the victim had threatened him, and five of those instances included a gun. Opposing counsel makes a distinction between subjective and objective evidence. It's the state's position that the subjective went to the defense presented. Defense counsel requested a second-degree murder instruction regarding the imperfect self-defense theory. And under that theory, you must show that the defendant actually and subjectively believed a danger existed. So subjective evidence was the crux of the defense counsel's defense. So the distinction between introducing subjective or objective evidence is of no consequence, where the subjective nature of the incident went right to the heart of the defendant's defense, whether he subjectively believed that he was in danger. Furthermore, defendant cannot establish prejudice as this court zoned in on in questioning. The jury was presented with six different instances in which the victim allegedly confronted and threatened the defendant, five of those which included brandishing a gun. Introducing a general reputation for the victim's violence reputation within the community wouldn't have changed the outcome of this trial. And furthermore, the defense counsel did try to lay a foundation for this testimony through the defendant. And it was after defense counsel questioned defendant regarding his general reputation, that's when she elected to forego her attempt. Absent any other questions, the people of the state of Illinois respectfully requested this court for defendant's convictions. Just to clarify one thing, you said defense counsel asked for a second-degree instruction. That was given also, was it not? Yes, right. And to lessen from first degree to second degree. And defendant raises in his first argument that he had a subjective belief that he was in danger. And where do you get that evidence? The Lynch evidence presented by defense counsel regarding the first factor, regarding past instances between the defendant and the victim. So again, the distinction that objective evidence would have helped his case, it's not true. Because what mattered to support defense counsel's theory was evidence that he subjectively believed that he was in danger. Thank you. Questions, Justice Welch? No questions. All right, thank you. Thanks. Ms. DeStefano, rebuttal? Yes, thank you, your honors. So I just want to briefly touch on a few things from the first and the second argument. So we interpret, again, I think we disagree, the state and I, on what defense counsel's comments on the record were, whether it was an objection or not. Regardless, it's still the judge's duty to make a record and put that on the record, the reasons why that he is closing the courtroom. And so it's not up to counsel to object to it in that instance. Because, again, this is a structural error that doesn't require prejudice. You don't have to show prejudice in the structural error. And counsel talked about Radford and Weaver. So Radford talked about Weaver, the Illinois Supreme Court case. And in Radford, they talked about how Weaver was limited to ineffective assistance of counsel claims at the collateral proceedings level and was limited to that. So Weaver doesn't apply here. As for Radford, Radford wasn't a blanket exclusion. For Radford, they allowed two members from each side into the courtroom. And so we would argue that it's different in that way. Additionally, the dissent in Radford was very instructive and helpful in explaining structural errors and that it's very hard to show the effect of the deprivation of the right to a fair trial, which is why it is a structural error and requires automatic reversal. Now, counsel talks about plain error. And we did briefly mention plain error in our reply brief, but it's still our argument that that's not required for structural errors. To the extent that your honors disagree with us and find that that was necessary, waiver and forfeiture is not a limitation on the court. So the court can still look past that and go and see the issue and go through the issue. Now, again, counsel brought up that didn't this happen at the end? Weren't there only alternates left? I think both sides can speculate when it happened. The judge was speaking in past tense. The bottom line is that it happened when jury selection was not done. So alternates, while the ones did not actually serve on the jury, were still jurors. They didn't know they were alternates until the very end. So they are still an integral part of the trial proceedings. And we would argue that it didn't really matter at what point it happened, as long as it was during void year at some point. Now, going to the third issue of the Lynch evidence, just very briefly, your honors. So counsel did ask for the second degree murder instruction. But the main defense was self-defense. The second degree murder instruction was an alternate theory. And that if they didn't believe this, then they should go to second degree and find this. And so while subjective evidence is important in that sense, as we did argue in our brief in the first issue, it was still important to have objective evidence corroborating that subjective belief. Objective evidence can't be understated. And that is very important to come out. And so that's why we argued that was the prejudice show. So, again, we're asking that the court remand and remand for a new trial. Thank you, your honors. Thank you. Other questions, Justice Welch? No questions. All right. We appreciate your arguments. We'll consider the briefs that have been filed, the arguments you've made today. We will take the matter under advisement and issue a decision in due course. Thank you. Thank you, your honor. Thank you.